UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

G.D. & R.D. obo G.D.,

    Plaintiffs,

v.                                        Case No. 20-12864

UTICA COMMUNITY
SCHOOLS,                          Honorable Nancy G. Edmunds

    Defendant.
_____/

UTICA COMMUNITY
SCHOOLS,

    Plaintiff,

v.

R.D, G.D., G.D., a minor child,
and JASON DANIEL WINE,

    Defendants.
_____/

**OPINION AND ORDER DENYING MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD [88] AND GRANTING MOTION FOR SUMMARY JUDGMENT [89]**

The matter is before the Court on cross-motions regarding judicial review of the underlying administrative decision in this case brought under the Individuals with Disabilities Education Act ("IDEA"). (ECF Nos. 88, 89.) Both motions have been fully briefed. (ECF Nos. 95, 96, 97, 98.) Pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), the motions will be decided without oral argument. For the reasons below, the Court DENIES Utica Community Schools' motion and GRANTS the motion filed by R.D., G.D., G.D., and Jason Daniel Wine (collectively "Defendants").

1

I.   **Background**

   A.   **This Lawsuit**

R.D. and G.D., the parents of G.D. ("the student"), a minor child, initiated this case through their counsel, Jason Daniel Wine, against Utica Community Schools ("the school district"), seeking an order in the amount of $134,420.00 in attorneys' fees and costs as "a prevailing party" in an administrative action under the IDEA, during which they were also represented by Mr. Wine. (ECF No. 1.) Not only did the school district disagree with that characterization, but it also later filed its own complaint stemming from the same administrative action, appealing certain findings made by the administrative law judge ("the ALJ") and seeking its own award of attorneys' fees and costs from both the parents of G.D. as well as Mr. Wine himself.[1] (Case No. 20-13255.) The Court has consolidated the two cases under the above-captioned case number (ECF No. 43) and bifurcated the briefing schedule (ECF No. 57). The parties have briefed the appeal of the ALJ's decision and once the Court rules upon the propriety of that decision, the parties may brief the issue of the attorneys' fees and costs. The administrative record has been filed under seal and is voluminous. (ECF Nos. 94, 102.)

---

[1] The IDEA permits the discretionary award of reasonable attorneys' fees "to a prevailing party who is the parent of a child with a disability," 20 U.S.C. § 1415(i)(3)(B)(i)(I), "to a prevailing party who is a State educational agency or local educational agency against the attorney of a parent who files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation, or against the attorney of a parent who continued to litigate after the litigation clearly became frivolous, unreasonable, or without foundation," § 1415(i)(3)(B)(i)(II), or "to a prevailing State educational agency or local educational agency against the attorney of a parent, or against the parent, if the parent's complaint or subsequent cause of action was presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation," § 1415(i)(3)(B)(i)(III).

**B.     The Underlying Facts and Administrative Proceeding**

During the 2019-2020 school year, G.D. was a five-year older kindergartener at Duncan Elementary in the school district. Because G.D. was defined as a "student with disability" under the IDEA and the Michigan Mandatory Special Education Act, he was eligible for special education and related services as determined by an individualized education program ("IEP") team on January 7, 2020.

An incident took place on January 24, 2020 during which G.D. assaulted staff members at his school in part by throwing objects, such as supplies, books, pieces of a broken thermometer, and the base of a phone, at them. (ECF No. 94-5, PageID.10465-73.) The school principal recommended that G.D. receive a long-term suspension from school. (*Id.* at PageID.10475.) Because this disciplinary sanction constituted a disciplinary change in placement and could result in a long-term removal of the student, the school district scheduled a manifestation determination review ("MDR") meeting.

The MDR meeting took place on February 4, 2020. Defendants and G.D.'s grandmother attended the meeting along with relevant members of the student's IEP team and the school district's counsel. During the meeting, the team discussed whether the incident for which the student was subject to discipline was a manifestation of his disability and all parties agreed that it was. The school district's Executive Director of Special Services then chose to invoke the special circumstances provision of the IDEA to remove the student to an interim alternative educational setting ("IAES") for up to forty-five school days due to his alleged use of a "weapon." Defendants, along with counsel, expressed their disagreement with his decision. Due to this disagreement, they did not provide input as to the services and support he would receive in that placement.

3

According to the district, the services and support in the IAES were aligned with those set forth in his IEP. While in that placement, G.D. received four hours of instruction per week—one hour three times a week at the district's administration building and one hour per week at his home. The school district expressed a desire to schedule an IEP team meeting to review and revise the January 7, 2020 IEP and also to possibly review and revise the IAES. Defendants declined this attempt. Instead, on February 24, 2020, Defendants filed a due process hearing request against the school district.

On March 5, 2020, a pre-hearing conference call was held between the parties and the tribunal, ALJ Michael J. St. John. During this conference, the issues for hearing were clarified and the due process hearing was bifurcated so that certain issues may be heard on an expedited basis. The expedited portions were scheduled to take place on March 19 and 20, 2020. Due to what the school district describes as multiple attempts to have Defendants come back to the IEP team table without success, the school district scheduled and held an IEP team meeting for March 17, 2020. (ECF No. 94-5, PageID.10441.) Defendants did not participate in that meeting. (*Id.* at PageID.10445.) The expedited portions of the due process hearing took place on March 19, 20, 26 and 30, 2020. On March 30, 2020, Defendants filed a new due process hearing request concerning the March 17, 2020 IEP. That request was consolidated with the first request.

On May 1, 2020, the ALJ issued an "Order Establishing Interim Alternative Educational Setting," finding the SEED program to be the best placement for the student during the remainder of the 2019-20 school year. (ECF No. 94-13, PageID.12279-89.) As described by the ALJ, "[t]he SEED program is a classroom for students who have severe behavioral issues. The classroom is specifically designed and engineered for students

4

with behavioral issues, has a small class size (currently four students and one transitioning student) and four staff members. There are fewer transitions in the SEED program than at Duncan Elementary." (*Id.*; *see also* ECF No. 94-5, PageID.10433-40.) The ALJ discussed the parents' concerns regarding the SEED program but ultimately rejected those arguments, finding them procedural rather than substantive.

The non-expedited portions of the hearing took place on June 15, 16, 17, and 18, 2020. On September 11, 2020, the ALJ issued a decision and order concluding as follows:

> This is a difficult case. The Student is a delightful and articulate young man who has a world of potential in front of him. He needs to learn how to control his ADHD and resulting behavior. It is the responsibility of the Respondent school district to teach the Student just how to do this. The Respondent did the best they could at Duncan Elementary School but were not successful. Just because the Respondent was not successful, however, does not mean that there was a violation of IDEA or a failure to provide the Student with FAPE [("free appropriate public education")]. However, the Respondent, with the exception of concluding that the Student used a weapon and placing him in the IAES placement, complied with IDEA.
> The Student is exceptionally lucky to have dedicated and caring parents and grandmother as well as dedicated and caring teachers and support stuff all of whom want the best for the Student. With the appropriate education and training, which for the 2020-2021 school year is the SEED Program, the Student can learn to manage his impulsiveness and behaviors and be successful in school and whatever he sets his mind to.
> The Petitioners are encouraged to continue to advocate for their son and to focus more on substance rather than form, procedure, and documentation.
> The Respondent's special education administrators are encouraged to continue to work with the Student with the same level of dedication and excellence.
> The Administrative Law Judge wishes all the parties well in their important work in the years to come.

(ECF No. 94-14, PageID.12473.) Despite the fact that the ALJ resolved many of the issues raised in favor of the school district, it is the school district that now appeals.[2]

---

[2] The school district did not file this appeal until after the parents filed their petition for attorneys' fees and costs as "a prevailing party." Defendants acknowledge that they

## II.      Legal Standard[3]

Under the IDEA, a "party aggrieved by the findings and decision" of an administrative proceeding may "bring a civil action . . . in a district court of the United States." 20 U.S.C. § 1415(i)(2)(A). The district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."[4] § 1415(i)(2)(B). The Supreme Court has held that "due weight shall be given" to the administrative proceedings. *See Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982); *see also Doe v. Bd. of Educ. of Tullahoma City Sch.*, 9 F.3d 455, 458 (6th Cir. 1993) (district courts must apply a "modified de novo" standard of review in IDEA appeals and "should give due weight to the state administrative proceedings in reaching its decision") (internal quotations and citation omitted). In performing their task of reexamining the evidence, district courts must not "substitute their own notions of sound educational policy for those of the school authorities which they review." *Deal v. Hamilton County Bd. of Educ.*, 392 F.3d 840, 849 (6th Cir. 2004) (internal

---

did not prevail on every issue but aver that they prevailed on "multiple significant issues." It is the ALJ's findings on those issues that the school district now challenges.

[3] The school district has named its motion as one for a judgment on the administrative record while Defendants have fashioned their motion as one for summary judgment under Federal Rule of Civil Procedure 56. The school district argues that the reference to Rule 56 is erroneous and warrants dismissal of the underlying motion. But the caption of a motion is not dispositive and even the school district acknowledges that Defendants have set forth the correct standard applicable to IDEA cases in their motion.

[4] Neither party has requested the Court hear additional evidence when reviewing the ALJ's decision and both seek a judgment in their favor based on the administrative record. In response to Defendants' motion, however, the school district alternatively argues that there are questions of fact warranting a trial. But the school district does not identify any additional evidence that is relevant to the issues it appeals. In light of the extensive administrative record and the relevant standard of review, the Court does not find a trial necessary here.

quotations and citation omitted). "The amount of weight due to administrative findings depends on whether the finding is based on educational expertise. Less weight is due to an agency's determinations on matters for which educational expertise is not relevant because a federal court is just as well suited to evaluate the situation." *Id.*

### III. Analysis

The issues raised by the school district's appeal are: whether the ALJ erred when he found that the student did not possess a dangerous weapon and was therefore inappropriately placed in the IAES; whether the ALJ erred when he found that the IAES failed to provide the student with a FAPE; and whether the ALJ improperly ordered the school district to provide 18 hours of compensatory education as a remedy.

**A. Whether the ALJ Erred When He Found That the Student Did Not Possess Dangerous Weapons and was therefore Inappropriately Placed in the IAES**

The school district first challenges the ALJ's finding that the objects the student used to assault staff were not dangerous weapons and thus he should not have been placed in the IAES. Defendants agree with the ALJ's finding on this issue.

As a general rule, once there is a determination that certain behavior was a manifestation of the child's disability, the child must be returned to the placement from which he or she was removed absent agreement to a change of placement. *See* 34 C.F.R. § 300.530(f). Under § 300.530(g)(1), however, school personnel may make the unilateral decision to remove a student to an interim alternative educational setting for up to 45 school days without regard to the manifestation determination if the child "[c]arries a weapon to or possesses a weapon at school, on school premises, or to or at a school

function."[5] The definition of "weapon" under the IDEA is the same as the definition of "dangerous weapon" in the criminal code. § 300.530(i)(4). Under 18 U.S.C. § 930(g)(2), "dangerous weapon" is defined as "a weapon, device, instrument, material, or substance, animate or inanimate, that is used for, or is readily capable of, causing death or serious bodily injury, except that such term does not include a pocket knife with a blade of less than 2½ inches in length." The term "serious bodily injury" means "bodily injury which involves--(A) a substantial risk of death; (B) extreme physical pain; (C) protracted and obvious disfigurement; or (D) protracted loss or impairment of the function of a bodily member, organ, or mental faculty." 18 U.S.C. § 1365(h)(3).

Here, the ALJ stated that "[i]t is difficult to imagine any instance where a Kindergarten student could cause death to anyone by throwing any of the objects at anyone at any range or velocity. Plastic phone receivers and thermostats, no matter how broken and jagged, are not readily capable of causing a substantial risk of death." (ECF No. 94-14, PageID.12466.) The ALJ similarly found the objects at issue not readily capable of causing serious bodily injury. The school district argues that the ALJ's reasoning was contrary to law. But the Court disagrees. The ALJ set forth the relevant definitions. And the manner of an object's use may be relevant to the inquiry of whether an object has the capacity to endanger life or inflict serious physical harm. *See United States v. Sturgis*, 48 F.3d 784, 787 (4th Cir. 1995) (discussing what constitutes "an instrument capable of inflicting death or serious bodily injury" for purposes of the United

---

[5] Another provision of the same regulation allows school personnel to remove a student to an IAES if the child "[h]as inflicted serious bodily injury upon another person while at school, on school premises, or at a school function." § 300.530(g)(3). But the school district did not invoke that provision here.

States Sentencing Guidelines). Moreover, the ALJ correctly reasoned that to hold that the objects here were dangerous weapons would allow the exception for placement in an IAES to swallow the general rule. Because the student did not possess dangerous weapons, he should not have been placed in an IAES.

### B. Whether the ALJ Erred When He Found That the Services and Support Provided to the Student in the IAES Failed to Provide Him with a FAPE

The school district also challenges the ALJ's finding that the services and support provided to the student in the alternate setting failed to provide him with a free appropriate public education. Defendants argue that the ALJ's finding on this issue is correct.

The IDEA requires states that receive federal funds for education to provide every disabled student with a free appropriate public education. 20 U.S.C. § 1412(a)(1)(A). To meet this goal, the district must develop, review, and revise an IEP for each student with a disability. § 1412(a)(4). The IEP must "be reasonably calculated to enable the student to receive educational benefits." *L.H. v. Hamilton County Dep't of Educ.*, 900 F.3d 779, 788 (6th Cir. 2018) (internal quotations and citation omitted).

The ALJ reasoned that despite his conclusion that the student should not have been placed in an IAES, this does not necessarily mean that G.D. was not receiving a FAPE while in that placement. The ALJ stated that if G.D. had been placed in the SEED program, for instance, "there would have been a foul but no harm." (ECF No. 94-14, PageID.12467.) But G.D. was instead receiving only four hours of instruction per week while in the IAES. The ALJ found the instruction itself appropriate but the quantity of that

9

instruction inappropriate. He found the student capable of receiving two hours of instruction per day and based his calculation of compensatory education on that finding.[6]

The school district acknowledges that G.D. has the intellectual capacity to receive more than four hours of instruction per week but argues that the evidence establishes that he was not able to do so due to the frequency and intensity of his behaviors.[7] But most of the evidence cited by the school district pertains to G.D.'s ability to receive instruction in a general education classroom setting. The school district itself states that any instruction that did occur typically took place in alternate settings where G.D. worked directly with staff, similar to when he was in the IAES. And the school district ultimately sought his placement in the SEED program—and the ALJ agreed—which presumably encompasses a regular school day and more than four hours of instruction per week. In sum, the evidence in the record supports the ALJ's finding that the four hours of instruction per week provided to G.D. while he was in the IAES failed to provide him with a FAPE.

### C. Whether the ALJ Erred When He Ordered the School District to Provide Eighteen Hours of Compensatory Education as a Remedy

The school district takes issue with the ALJ's award of eighteen hours of general education compensatory education as a remedy. Defendants urge the Court to uphold that award.[8]

---

[6] The parents sought 373 hours of compensatory education at the administrative level, but the ALJ rejected that request, finding in part that the student was incapable of receiving seven hours of instruction per day as requested by his parents.

[7] The Court notes that the school district cites to large swaths of the record without pinpointing exactly which evidence it is relying on in support of this argument. (*See, e.g.*, ECF No. 95, PageID.17373.) For example, it cites to ECF No. 94-14, PageID.12643-13468, which consists of over 800 pages of testimony from the due process hearing and includes testimony regarding matters not at issue on appeal.

[8] Defendants believe the student should have been awarded an even larger number of hours of compensatory education but have not appealed that issue.

"An award of compensatory education is an equitable remedy that a court can grant as it finds appropriate." *Bd. of Educ. of Fayette Cty. v. L.M.*, 478 F.3d 307, 316 (6th Cir. 2007). An appropriate award is "designed to ensure that the student is appropriately educated within the meaning of the IDEA." *Id.* at 316 (internal quotations and citation omitted). Thus, compensatory education is designed to compensate a student for educational loss suffered as a result of a violation of the IDEA and not to remedy mere technical defects. *See Somberg v. Utica Cmty. Sch.*, 908 F.3d 162, 173 (6th Cir. 2018).

Compensatory education is an appropriate remedy here due to the finding that the services and support provided to the student in the alternate setting failed to provide him with a FAPE. The school district argues, however, that even if the IAES failed to provide the student with a FAPE, he should not have been awarded compensatory education because the parents' actions contributed to that failure. The ALJ used a similar line of reasoning to reduce the thirty hours of compensatory education he found appropriate[9] to eighteen hours due to the parents' failure to attend an IEP meeting that was offered by the school district on March 3, 2020 and may have resulted in a change in placement from the IAES to the SEED program. Yet, the school district now argues that the number of hours should have been reduced even further because the parents refused to provide input regarding the services and support the student would receive in the alternate setting during the February 4, 2020 IEP team and did not want to return to the IEP team table after that meeting.

---

[9] This calculation was based on ten hours of instruction per week (two hours per day) minus the four hours per week that were actually provided multiplied by the five weeks the student was in the IAES.

The ALJ acknowledged that the district had made an offer on February 6, 2020 to hold another IEP meeting but reasoned that it would be "impossible to be certain when an IEP would have been convened . . . but it would have taken at least some time." (ECF No. 94-14, PageID.12468.) Moreover, in reducing the hours due to the parents' failure to attend the March meeting, the ALJ stated that their attendance may have resulted in a change in placement from the IAES to the SEED program, which would have provided a FAPE. But it appears that the SEED program was not proposed as a possibility until the March meeting. (*See* ECF No. 94-13, PageID.12287.) Thus, the Court finds there is no need to further reduce the award of eighteen hours of compensatory education due to the parents' previous actions.

## IV. Conclusion

Having conducted an independent review of the administrative record and giving due weight to the ALJ's decision, the Court finds that the challenged findings are supported by a preponderance of the evidence. Thus, the school district's motion is DENIED, and Defendants' motion is GRANTED. The parties may now proceed to brief the remaining issues raised in this case relating to attorneys' fees and costs. Any dispositive motion on those issues must be filed within forty-five (45) days of the date of this order.

SO ORDERED.

                                                s/Nancy G. Edmunds
                                                Nancy G. Edmunds
                                                United States District Judge

Dated: March 30, 2023

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 30, 2023, by electronic and/or ordinary mail.

                                                <u>s/Lisa Bartlett</u>
                                                Case Manager